**Robert H. DENNIS, Appellant,**

v.

**Hazel L. JONES, Appellee.**

**No. 04–CV–841.**

District of Columbia Court of Appeals.

Argued Feb. 24, 2006.

Decided July 19, 2007.

James M. Heffler, for appellant.

Benjamin A. Klopman, Rockville, MD, for appellee.

Before WASHINGTON, Chief Judge, FISHER, Associate Judge, and SCHWELB,* Senior Judge.

FISHER, Associate Judge:

Dr. Robert H. Dennis, a plastic surgeon, appeals from a jury verdict in a medical malpractice action. He principally complains that the Superior Court erroneously refused to give a jury instruction on assumption of risk in addition to the contributory negligence instruction which was given. Even assuming the court should have given the requested instruction, its failure to do so was harmless on the record presented. Therefore, we affirm.

## I. Factual Background

In February 1999, appellee Hazel Jones began consulting Dr. Dennis about whether plastic surgery could relieve her chronic back pain. Although they discussed breast reduction surgery to relieve the strain on Ms. Jones's back, she also expressed interest in abdominoplasty—a surgical procedure to reduce the size of the abdomen. At their initial meeting, Dr. Dennis noted that Ms. Jones had high blood pressure, had smoked a quarter pack of cigarettes a day for twenty years, and was more than 100 pounds overweight. Ms. Jones decided not to have breast reduction surgery because she could not afford it, but she chose to undergo abdominoplasty (and carpal tunnel release surgery to address a separate issue).[1]

Dr. Dennis performed the surgeries on April 30, 1999, and Ms. Jones went home later that day, but she soon began experiencing significant complications, including difficulty breathing and healing, and infections in her surgical wounds. Ms. Jones was hospitalized on two occasions in May 1999 and underwent two procedures to surgically remove infected tissue. In June 1999 continuing complications caused Dr. Dennis to perform a skin graft on the affected area, and in August 1999 Ms. Jones was diagnosed with Hepatitis C, possibly related to a blood transfusion she received in May.

## II. Procedural Background

Ms. Jones filed a complaint against Dr. Dennis on December 28, 2001, claiming negligence and failure to obtain informed consent. Over the course of four days, a jury heard testimony from six witnesses, including the parties and two experts.[2]

---

* Judge Schwelb was an Associate Judge of the court at the time this case was argued. His status changed to Senior Judge on June 24, 2006.

1. There was some dispute as to whether Ms. Jones agreed to receive liposuction, which Dr.

Dennis performed at the time he performed the other two surgeries.

2. In addition to Ms. Jones, Dr. Dennis, and their experts, Ms. Jones's sister and husband also testified. Ms. Jones's husband was a

The primary question raised on appeal stems from a disagreement about what Dr. Dennis told Ms. Jones about the need to quit smoking and what Ms. Jones told him about whether she had followed his advice.

Ms. Jones testified that Dr. Dennis failed to fully advise her that continued smoking, in conjunction with her high blood pressure and obesity, would increase the risk of post-surgery complications, including infection, and difficulty healing and breathing. According to Ms. Jones, Dr. Dennis told her "that he didn't see where the smoking would be a problem, since [she] didn't smoke that much." In fact, she testified that she kept smoking until the date of her surgery. Finally, Ms. Jones said that she "would not have had the surgery" had she known about the increased risks posed by her obesity, smoking, and hypertension, or by undergoing abdominoplasty and liposuction at the same time.

Dr. Dennis maintained that he fully discussed the risks of smoking with Ms. Jones. Indeed, he testified that he explained to her that he would not perform the proposed surgeries on someone who was actively smoking and that he directed her to quit smoking at least a month before the surgery. According to Dr. Dennis, Ms. Jones told him at her April 27 preoperative visit that she had quit smoking earlier that month. Ms. Jones signed a consent form indicating that Dr. Dennis had discussed with her the complications that might arise from abdominoplasty, including those resulting from smoking. However, the doctor conceded that he did not discuss with Ms. Jones the surgical risks associated with obesity, or with a combination of obesity and smoking. He did not indicate whether he discussed with Ms. Jones the risks associated with the combined surgeries.

At the close of evidence, counsel for Dr. Dennis requested jury instructions on both assumption of risk and contributory negligence. The court agreed to instruct on contributory negligence, explaining that "the only issue on which there is sufficient evidence to get to the jury on a contributory negligence claim is the smoking." It denied the assumption of risk instruction. First, the trial judge quoted *Morrison v. MacNamara*, 407 A.2d 555, 567 (D.C. 1979), which explains that,

> [a]lthough the defense of assumption of risk has been applied in a wide variety of circumstances to defeat negligence claims, the defense has rarely been sustained in actions involving professional negligence.... [T]he disparity in knowledge between professionals and their clientele generally precludes recipients of professional services from knowing whether a professional's conduct is in fact negligent.... Thus, save for exceptional circumstances, a patient cannot assume the risk of negligent treatment.

In response, counsel for Dr. Dennis made clear that his assumption of risk theory was likewise based on smoking: "I'm not saying that she assumed the risk of negligent treatment. I'm saying she not only assumed the risk of not smoking but the risk that she could develop exactly what she did develop from the surgery." The court noted, secondly, that the instruction "would really be duplicative in any event...." "[I]t's hard to imagine that the jury could find assumption of the risk as posited by defense counsel without also finding first, that Ms. Jones was given adequate informed consent. And second, that Ms. Jones was contributorily negligent."

The verdict form instructed the jury to determine if (1) Dr. Dennis was negligent

party to the litigation below but his claims are not before this court.

in his treatment of Ms. Jones, or if (2) Dr. Dennis failed to obtain her informed consent to the surgeries. If the jury responded affirmatively to *either* of these questions, and found that Dr. Dennis's conduct or omissions proximately caused her injuries, it was to answer the next question:

> Has defendant Robert Dennis proved, by a preponderance of the evidence, that plaintiff Hazel Jones was herself negligent and that her negligence was a proximate cause of her injuries?

The jury found that Dr. Dennis was not negligent, but that he failed to obtain her informed consent. It also found that Dr. Dennis had not proven that Ms. Jones "was herself negligent." Ms. Jones was awarded $501,300.00 in past and future medical expenses and non-economic damages.

### III. Discussion

#### A. Standard of Review

■■■■ "[A] party is entitled to a jury instruction upon the theory of the case if there is sufficient evidence to support it." *George Washington Univ. v. Waas,* 648 A.2d 178, 183 (D.C.1994). "Moreover, in determining whether a proposed instruction on a party's theory of the case was properly denied, we review the record in the light most favorable to that party." *Nelson v. McCreary,* 694 A.2d 897, 901 (D.C.1997). However, a court's "refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law." *Nelson,* 694 A.2d at 901 (internal quotation marks omitted) (quoting *Psychiatric Inst. of Washington v. Allen,* 509 A.2d 619, 625 (D.C.1986)). In other words, an error in denying an instruction can be harmless. *Nelson,* 694 A.2d at 902.

#### B. Assumption of Risk Instruction

■■■■ Before turning to the requested instruction on assumption of risk, we first review the grounds for liability. "Failure to obtain informed consent" is a variety of medical negligence. *Jones v. Howard Univ., Inc.,* 589 A.2d 419, 422 n. 4 (D.C. 1991). " 'In order to prevail in an action based on a theory of informed consent, the plaintiff must prove [1] that if he had been informed of the material risk, he would not have consented to the procedure and [2] that he had been injured as a result of submitting to the procedure.' " *Miller–McGee v. Washington Hosp. Ctr.,* 920 A.2d 430, 439 (D.C.2007) (quoting *Cleary v. Group Health Ass'n, Inc.,* 691 A.2d 148, 155 (D.C.1997)). A doctor need only inform the patient of material risks—those risks "which a reasonable person would consider significant in deciding whether to undergo a particular medical treatment." *Abbey v. Jackson,* 483 A.2d 330, 332 (D.C. 1984). In the present case, the jury found that Dr. Dennis failed to obtain Ms. Jones's informed consent. However, the verdict does not make clear which material risk(s) the jury found Dr. Dennis failed to discuss with Ms. Jones. For purposes of this analysis, and viewing the evidence in the light most favorable to Dr. Dennis, we will assume the jury may have found that Dr. Dennis informed Ms. Jones of the risks associated with smoking. We turn next to the requested instruction on assumption of risk, which the trial court denied.

■■■■ Assumption of risk, like contributory negligence, is an affirmative defense in negligence cases and may operate as a complete bar to liability. *See Morrison,* 407 A.2d at 566. We have often held that the two defenses are very similar, overlapping but not always congruent. *See Washington Metropolitan Area Transit Authority v. Johnson,* 726 A.2d 172, 175

(D.C.1999); *Janifer v. Jandebeur,* 551 A.2d 1351, 1352 (D.C.1989); *Sinai v. Polinger Co.,* 498 A.2d 520, 524 (D.C.1985); *Scoggins v. Jude,* 419 A.2d 999, 1004 (D.C. 1980). While assumption of risk focuses on the plaintiff's subjective knowledge of the existence of the risk and his voluntary assumption of it, *see Scoggins,* 419 A.2d at 1004, contributory negligence focuses on the "objective reasonableness of the plaintiff's conduct." *Sinai,* 498 A.2d at 524. Contributory negligence is found where "the plaintiff, by encountering the risk created by the defendant's breach of duty, departed from an objective standard of reasonable care." *Id.* The defenses sometimes merge, because a plaintiff who knowingly and voluntarily exposes herself to a danger may also be found to have departed from an objective standard of reasonable care by encountering the risk.

■ Because of the disparity in knowledge between a doctor and his patient, the defense of assumption of risk is rarely available in medical malpractice cases. *Morrison,* 407 A.2d at 567–68. However, the defense may be sustained where "the patient was specifically warned about a risk, and refused to follow the doctor's instructions." *Id.* at 568 (citing *Levett v. Etkind,* 158 Conn. 567, 265 A.2d 70, 74–75 (1969); *De Blanc v. Southern Baptist Hospital,* 207 So.2d 868, 871 (La.Ct.App.1968); *Munson v. Bishop Clarkson Memorial Hospital,* 186 Neb. 778, 186 N.W.2d 492, 493–94 (1971) (cases where patients suffered injuries after they refused assistance, or failed to call for assistance, against the advice of medical caregivers)). *But cf. Hall v. Carter,* 825 A.2d 954, 956–57, 961 (D.C.2003) (jury found abdominoplasty patient *contributorily negligent* where her doctor warned her that smoking deterred wound-healing, she continued to smoke until the day of surgery, misrepresented the extent of her smoking, then had

difficulty healing). While acknowledging that the defense is sometimes (but rarely) available in medical malpractice cases, Ms. Jones asserts that assumption of risk does not apply on this record because the doctor's failure to disclose *all* of the risks of the combined surgeries "completely negated [his] contention that Ms. Jones fully comprehended and assumed all of the risks and dangers . . . ."

Ms. Jones's argument certainly is bolstered by the jury's finding that Dr. Dennis failed to obtain her informed consent to the surgeries. Nevertheless, reviewing the evidence in the light most favorable to Dr. Dennis, this may have been one of those rare cases where assumption of risk was a viable defense to a claim of failure to obtain a patient's informed consent. *See Nelson,* 694 A.2d at 901 (a requested instruction should be given if there is "some evidence supporting a party's theory of the case"). The verdict indicates that Dr. Dennis did not inform Ms. Jones of *all* the material risks, but it does not reveal what advice was lacking.

Smoking may well have created the most significant risk, however. The doctor insisted that he informed Ms. Jones of the risks of smoking and told her that continued smoking might cause her injury. Ms. Jones admitted that she continued smoking until the day of her surgeries. Both expert witnesses and Dr. Dennis himself testified that her continued smoking contributed to the post-surgical complications. Based on this evidence, a jury in theory could have found that the plaintiff actually knew and understood the full scope and magnitude of the danger arising from smoking and voluntarily exposed herself to that danger. Moreover, Dr. Dennis testified that he would not have performed the surgeries if he had known the truth—that Ms. Jones had continued to smoke. Therefore, the jury could have found that

Ms. Jones proximately caused her own injuries by continuing to smoke (contrary to the doctor's instructions) and by falsely assuring the doctor that she had stopped smoking.

There is a dearth of case law on this subject, however, and we need not decide whether Dr. Dennis was entitled to an instruction on assumption of risk. Assuming (without deciding) that it was error to deny that instruction, we nevertheless are satisfied that any error was harmless.

## C. Harmless Error

Reversal is not warranted where one can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Nelson,* 694 A.2d at 902 (applying harmless error analysis to trial judge's erroneous refusal to instruct the jury on a party's theory of the case) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). "[A]n error will be harmless, and will not be reversible, when the instructions the court actually gave adequately presented the defense theory and properly informed the jury of the applicable legal principles involved, despite the erroneous omission." *Higgenbottom v. United States,* 923 A.2d 891, 899 (D.C. 2007) (citations, quotations marks, and internal editing omitted); *see also Sinai,* 498 A.2d at 530 n. 17 ("The trial court's charge is not to be tested in isolated segments; the question is whether the charge as a whole was fair and adequate." (internal quotation marks and citation omitted)). We must also review "the charge itself as part of the whole trial," *United States v. Perholtz,* 266 U.S.App. D.C. 390, 395, 836 F.2d 554, 559 (1987) (internal quotation marks and citations omitted), to determine whether the jury's attention was "ade-

quately focused" on the defense's theory. *Western Air Lines, Inc. v. Criswell,* 472 U.S. 400, 421, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). Viewing the instructions and record as a whole, we can say, "with fair assurance," that "the judgment was ... not substantially swayed" by omission of an instruction on assumption of risk. *See District of Columbia v. Robinson,* 644 A.2d 1004, 1007 (D.C.1994) (failure to give requested instruction held to be harmless error).

Dr. Dennis did not request an assumption of risk instruction tailored to the facts of this case. Thus, the instruction that would have been given, had his request been granted, was the standard instruction, which states:

You may find that the plaintiff assumed the risk of injury if the defendant proves by a preponderance of the evidence both of the following:

(1) That the plaintiff actually knew and understood the full scope and magnitude of the danger arising from the defendant's conduct, and

(2) That the plaintiff voluntarily exposed herself to that danger.

Standardized Civil Jury Instructions for the District of Columbia, No. 5–17 (2002). Although the court did not give this charge, it did instruct the jury on contributory negligence as follows:

The defendant, Dr. Dennis, alleges that Ms. Jones was herself negligent in continuing to smoke cigarettes after he told her to stop smoking in advance of the surgeries. Dr. Dennis alleges further that such negligence was a significant contributing factor in the complications that Ms. Jones experienced following the surgeries on April 30, 1999. In this regard, a patient must exercise reasonable care to cooperate with her doctor. And if the patient's failure is a cause of the patient's harm, then the patient is

contributorily negligent. And the patient cannot recover from the doctor even if the doctor was negligent.

This instruction clearly conveyed the essence of the defense—that Ms. Jones was responsible for her own injuries because she failed to comply with Dr. Dennis's instructions to quit smoking. "Here, the trial court's instructions on contributory negligence ... encompassed [the very activity] that the defense assigned as evidence that [Ms. Jones] had assumed the risk." *Sinai,* 498 A.2d at 526. For Dr. Dennis to succeed on either defense (assumption of risk or contributory negligence), the jury would have had to find that he informed Ms. Jones about the risks of smoking and told her to quit, and that her continued smoking was a proximate cause of her injuries. However, the jury found that Dr. Dennis had failed to prove contributory negligence, a theory of defense based solely on her smoking, and we can say "with fair assurance" that the outcome would not have been different had the jury been instructed on assumption of risk.

In this forum Dr. Dennis makes subtle distinctions between reasonable and unreasonable risks, but he did not make these claims in the trial court. (We have said that assumption of risk may encompass both reasonable and unreasonable risks, while contributory negligence applies only to unreasonable risks. *See Scoggins,* 419 A.2d at 1004.) He argues that the jury may have rejected the defense of contributory negligence because it thought that Ms. Jones assumed a reasonable risk when she continued smoking. Thus, he asserts,

the verdict rejecting the defense of contributory negligence does not foreclose a finding of assumption of risk. He postulates that Ms. Jones could have assumed the risk of smoking (a reasonable risk) but not have been contributorily negligent (because the risk was not unreasonable).

This possibility is more theoretical than real. Dr. Dennis's counsel did not ask the jury to focus on whether Ms. Jones acted reasonably or unreasonably when she continued to smoke. Instead, when he discussed smoking, counsel focused on credibility and causation. "As you've heard, Dr. Dennis is of the old school.... [I]f he knows that the patient is still smoking, he won't [perform the surgery]." Counsel asked the jurors whether they "believe[d] that this man said to his patient, don't worry about the smoking, it's no big deal," as Ms. Jones had testified, or believed instead "that he did what he says he always, always does, which is tell the patient ... that you have to stop [smoking] a month before or I'm not going to do it. And she knew that on April 27th when she told him she had stopped earlier that month."

Considering the instructions as a whole, and in the context of this record, we see no appreciable likelihood that this jury—which rejected the defense of contributory negligence—would have found that Ms. Jones assumed the risk if given the standard jury instruction (which makes no distinction between reasonable and unreasonable risks). Therefore, any error resulting from the court's refusal to give the requested instruction was harmless. *See Higgenbottom,* 923 A.2d at 899–900.[3]

---

**3.** Dr. Dennis makes two additional arguments, which we dispose of here. He contends that the trial judge committed reversible error by instructing the jurors that if they found Ms. Jones contributorily negligent, then "[she] cannot recover from the doctor even if the doctor was negligent." He claims this instruction "serve[d] only to potentially discourage jurors from finding contributory negligence." The instruction given by the trial judge is an accurate statement of our law on contributory negligence. *See Massengale v.*

The judgment of the Superior Court is hereby affirmed.

*So ordered.*

*Pitts,* 737 A.2d 1029, 1032 (D.C.1999); *Elam v. Ethical Prescription Pharmacy, Inc.,* 422 A.2d 1288, 1289 n. 2 (D.C.1980); *Wingfield v. Peoples Drug Store, Inc.,* 379 A.2d 685, 687 (D.C.1977) ("contributory negligence bars a plaintiff's recovery"). Moreover, Dr. Dennis, who bears the burden of persuasion here, has not cited a single case which holds that instructing a jury about the legal impact of a finding of contributory negligence is improper and unduly prejudicial.

Dr. Dennis also complains that the trial judge erroneously omitted language about proximate cause from the "bad result" jury instruction. However, this instruction only impacts the jury's consideration of whether Dr. Dennis was negligent. The issue is moot because the jury found that the doctor was not negligent; therefore, he was not prejudiced by any error in the instruction. *See Wingfield,* 379 A.2d at 687–88 (plaintiff "must show prejudice before she can challenge a jury instruction"). Even if the issue were not moot, the remaining instructions contained ample guidance on the plaintiff's burden to prove proximate cause.