Eleanor T. JOHNSON, et al., Appellees,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.

No. 95–7254.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1996.

Decided Nov. 5, 1996.

Bruce P. Heppen, Washington, DC, argued the cause for appellant, with whom Robert L. Polk, Robert J. Kniaz and Frederic H. Schuster, were on the briefs.

David T. Smorodin, Washington, DC, argued the cause and filed the brief for appellees.

Before: WALD, WILLIAMS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

*CERTIFICATION OF QUESTION OF LAW* by the United States Court of Appeals for the District of Columbia Circuit to the District of Columbia Court of Appeals

GINSBURG, Circuit Judge:

On October 18, 1996 we heard oral argument in the case of *Eleanor T. Johnson et al. v. Washington Metropolitan Area Transit Authority,* No.95–7254. A question of District of Columbia law will be determinative of the pending appeal. There is no controlling precedent to be found in the decisions of the District of Columbia Court of Appeals. We therefore certify the following question of law to the District of Columbia Court of Appeals pursuant to D.C.Code § 11–723:

> Under District of Columbia law, and upon the facts described below, may a plaintiff who has voluntarily assumed an unreasonable risk of incurring a particular injury recover from a defendant who failed to take the last clear chance to prevent that injury?

This question arose in a wrongful death action against the Washington Metropolitan Area Transit Authority that was originally filed in the Superior Court of the District of Columbia. For a brief discussion of the procedural history of this case, *see Johnson v. WMATA,* 867 F.Supp. 1103, 1104–06 (D.D.C. 1994). The WMATA removed the action to the United States District Court for the District of Columbia. *Finnegan's Wake* would be more easily summarized than the ensuing procedural history of this case. For the published record of these proceedings, *see Johnson v. WMATA,* 883 F.2d 125 (D.C.Cir. 1989), *cert denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990), *on remand,* 764 F.Supp. 1568 (D.D.C.1991), 773 F.Supp. 459 (D.D.C.1991), 790 F.Supp. 1174 (D.D.C.1991), 867 F.Supp. 1103 (D.D.C.1994), and 901 F.Supp. 1 (D.D.C.1995).

The few relevant facts are as follows. On March 20, 1986 Devora Johnson jumped from the subway station platform into the path of an oncoming WMATA train. The parties do not contest that Ms. Johnson jumped of her own volition and with the intention of com-

mitting suicide. *See* 883 F.2d at 127; *see also* 901 F.Supp. at 2–3 (discussing legal significance of fact that Ms. Johnson intended to commit suicide); Memorandum and Order, Civil Action No. 86–3110–LFO, 1993 WL 37445 (D.D.C. February 3, 1993) ("This case involves the death of Devora Johnson, who committed suicide by jumping onto the defendant's subway track").

At the end of the second trial of this cause, the presiding judge concluded that the WMATA could be found liable under the doctrine of last clear chance even though Ms. Johnson had assumed the risk of dying as she did. The court therefore instructed the jury first to determine whether the WMATA in fact had the last clear chance to save Ms. Johnson. At trial, the parties had agreed that a reasonably prudent train operator would have been able to react to the danger and to apply the emergency brakes no more than one second after Ms. Johnson leapt onto the tracks, bringing the train safely to a standstill in ten seconds. The jury found that Ms. Johnson jumped when the train was still more than ten seconds away and, therefore, that the WMATA had the last clear chance to save Ms. Johnson by stopping the train.

Because Ms. Johnson was a trespasser upon the tracks, the WMATA could be found liable, even under the doctrine of last clear chance, only if the train operator had been willful or wanton in failing to take action to prevent the accident. See *Holland v. Baltimore & O.R. Co.*, 431 A.2d 597, 599 (D.C. 1981) (en banc) (trespasser may recover only for "intentional, wanton or willful injury or maintenance of a hidden engine of destruction"), quoted in *Johnson*, 883 F.2d at 130. Therefore, the jury was asked second to determine whether the train operator had been willful, wanton, or reckless in failing to take the last clear chance he had to avoid injuring Ms. Johnson. The jury concluded that the train operator did act willfully or wantonly when he operated his train, presumably because of the evidence showing that he had tested positive for cocaine and marijuana shortly after the accident.

The jury held the WMATA liable under both the Wrongful Death and the Survival Acts. The WMATA then filed the present appeal, arguing that the plaintiffs are barred from recovering under the doctrine of last clear chance because Ms. Johnson had assumed the risk of death on the tracks.

We understand that under the law of the District of Columbia a plaintiff who has been contributorily negligent may recover nonetheless under the last clear chance doctrine. *See Robinson v. District of Columbia*, 580 A.2d 1255, 1258 (D.C.1990), quoted in *Belton v. WMATA*, 20 F.3d 1197, 1199–1200 (D.C.Cir.1994). In order to recover under the last clear chance doctrine, the negligent plaintiff must show:

(1) that the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) that the plaintiff was oblivious to the danger, or unable to extricate herself from the position of danger; (3) that the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of her oblivion to it or her inability to extricate herself from it; and (4) that the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate herself from it, but failed to do so.

*District of Columbia v. Huysman*, 650 A.2d 1323, 1326 (D.C.1994), *quoting Felton v. Wagner*, 512 A.2d 291, 295 (D.C.1986).

The District of Columbia Court of Appeals has not, however, spoken to the question whether a plaintiff who voluntarily assumed an unreasonable risk of incurring a particular injury may recover from a defendant who failed to take the last clear chance to avoid inflicting that injury. We are unable to determine how the Court of Appeals would resolve this question. On the one hand, the Court of Appeals has held that a plaintiff who voluntarily exposes herself to an unreasonable risk of injury is considered not to have "assumed the risk" but to have been contributorily negligent. *See, for example, Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980) ("we ... limit the assumption of risk discussion to reasonable voluntary risk taking, and consider all unreasonable risk taking under the heading of contributory negli-

gence"); *Janifer v. Jandebeur*, 551 A.2d 1351, 1352 (D.C.1989) ("Where a plaintiff has [voluntarily exposed himself to an unreasonable risk], the concept of 'assumption of risk' overlaps with contributory negligence and amounts to the same defense"). This suggests that a court in the District of Columbia would hold that Ms. Johnson was contributorily negligent when she jumped in front of the oncoming train, with the consequence that the plaintiffs would be able to recover under the last clear chance doctrine.

On the other hand, the District of Columbia Court of Appeals has held that a plaintiff's assumption of a risk acts as a bar to her recovery because "the plaintiff is regarded as having consciously relieved the defendant of any duty which he otherwise owed the plaintiff. Being under no duty, the defendant may not be charged with negligence." See *Sinai v. Polinger*, 498 A.2d 520, 524 (D.C.1985); *accord Restatement (Second) of the Law of Torts*, § 503 ("A plaintiff whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the plaintiff's safety is a legal cause of the plaintiff's harm"). This suggests that Ms. Johnson, by willfully leaping in front of the train, relieved the WMATA of its duty of care in operation of the train with respect to her, in which event the plaintiffs would not be able to recover under the last clear chance doctrine.

In addition we note that in order to recover under the last clear chance doctrine, a plaintiff must prove that she "was oblivious to the danger, or unable to extricate herself from the position of danger." *Huysman*, 650 A.2d at 1326. Thus the doctrine presupposes that the plaintiffs' decedent, far from voluntarily accepting and welcoming the risk, would have chosen to take the steps needed to avoid the risk had she been able to do so. The doctrine, by its terms, therefore seems inapplicable to a plaintiff who has voluntarily assumed the risk of incurring, or as seems more accurate in this case actively invited, the particular injury that occurred.

Finally, the policy in the law favoring the preservation of human life may not be furthered by permitting the estate of a suicide to recover under the doctrine of last clear chance. Allowing an individual to recover for injuries she has actively invited would provide an incentive—in the form of expected compensation for her heirs if not for herself—for a suicidal or a financially desperate person to act upon her self-destructive impulses. In contrast, the defendant with the last clear chance of avoiding the injury has the proper incentive to try to prevent the injury regardless whether the individual in peril was negligent, reckless, or willful because the defendant will not ordinarily know ex ante how the person came to be in a perilous situation.

These are strong arguments for denying recovery. Nevertheless, as we have seen, the District of Columbia Court of Appeals has equated the voluntary assumption of an unreasonable risk with contributory negligence at least in some circumstances. The Court of Appeals has not, however, indicated whether the plaintiff's voluntary assumption of an unreasonable risk acts as a bar to recovery under the last clear chance doctrine. For that reason, we are impelled to certify the question to the District of Columbia Court of Appeals.

Appended to this certification are the briefs and portions of the trial court record provided by the parties to this appeal. In addition, we shall provide the Court of Appeals with any other portion of the trial court record that the Court of Appeals would like to have in order to answer the certified question.

*So ordered.*